Cuyahoga County Common Pleas Court.

J. C. MILLER & BERTHA W. MILLER V. JOSEPH W. KENNEDY, RECEIVER FOR GEORGE I. CRAMER, INC., ET AL.

Decided, October 5, 1928.

*C. W. Swartzel,* and *C. A. Miller,* for J. C. Miller and Bertha W. Miller.

*Calfee, Fogg & White,* for Joseph W. Kennedy, Receiver for Geo. I. Cramer, Inc.

*Fackler & Woods,* for George Blumenstock and Elizabeth Blumenstock.

RUHL, J.

The matter for the court's attention is Action No. 288, 111, entitled *Miller et al,* v. *Kennedy, Receiver, et al.* The action is brought by vendees of real estate to have a trust declared as against the receiver for George I. Cramer, Inc., having for its object to obtain possession of warranty deed delivered to said George I. Cramer, Inc., in escrow. It appears from the evidence that J. C. Miller and Bertha W. Miller, his wife, entered into a contract to purchase real estate, described in the petition, from the defendants George Blumenstock and Elizabeth Blumenstock, his wife, under date of September 17, 1927. The letters containing escrow instructions under date of September 20, 1927, were signed by Elizabeth Blumenstock, defendant, and another signed by Bertha W. Miller and J. C. Miller, husband and wife. The defendant Elizabeth

Blumenstock entered into a contract to sell real estate situated in Bay Village, Cuyahoga county, Ohio, to the plaintiffs for the sum of $1,850, of which $200 was paid on September 17, 1927, and $800 on September 26, 1927. The plaintiffs Miller further executed a note and mortgage on said realty to the defendant Elizabeth Blumenstock in the sum of $850. The money and the note and mortgage were delivered in escrow to George I. Cramer, Inc., and the Blumenstocks delivered their deed to the said George I. Cramer, Inc., which deed was to be delivered to the plaintiffs under the conditions contained in the escrow. The material parts of the vendor's escrow instructions were as follows:

"September 20, 1927. George I. Cramer, Inc., 1230 Williamson Building, Cleveland, Ohio, Gentlemen: The undersigned hands you herewith a properly executed warranty deed conveying the following described premises to Bertha W. Miller, the grantee therein, which the undersigned has sold for the consideration or purchase price of $1850. (Description follows and a recital as to the mortgage and note for $850.) The undersigned will accept" etc. "When you have in your possession the sum of $1000 together with the above mentioned promissory note and first mortgage, you may cause the above mentioned warranty deed and first mortgage to be filed for record if and when by filing thereof you can obtain a new statement of title thereon showing title good in Bertha W. Miller, and free and clear of any and all encumbrances except the restrictions and conditions of record if any. The above mentioned mortgage of $850 and the taxes and assessments for the year 1927 and thereafter."

The vendor's letter of instructions were similar in wording, the material parts being as follows:

"September 20, 1927. George I. Cramer, Inc., 1230 Williamson Building, Cleveland, Ohio. Gentlemen: The undersigned hands you herewith the sum of $800 which together with the sum of $200 already deposited with you makes a total of $1000 to apply on the purchase price of the following described premises which the undersigned is purchasing for the consideration of purchase price of One Thousand, Eight Hundred and Fifty Dollars ($1850.)" and "when you have in your possession a pro-

perly executed warranty deed conveying above described premises to Bertha W. Miller you may cause same to be filed for record together with the above mentioned mortgage if and when by filing thereof you can obtain a new statement of title thereon showing title thereto good in Bertha W. Miller, free and clear of any and all encumbrances except the restrictions and conditions of record if any. The above mentioned mortgage of Eight Hundred and Fifty Dollars ($850.) and the taxes and assessments for the year 1927 and thereafter."

Among other things the contract of sale provided:

"It is mutually agreed by and between the parties hereto that all necessary monies and papers in connection with this transaction are to be placed in escrow with George I. Cramer, Inc., on or before September 25, 1927."

Two further paragraphs are as follows:

"The undersigned will place the sum of Eight Hundred Dollars ($800.) in escrow with George I. Cramer, Inc., on or before September 25, 1927, and a promissory note of Eight Hundred and Fifty Dollars ($850.) payable Four Hundred Fifty Dollars ($450.) on or before one year from the date of execution and the balance on or before two years from date of execution. The said note is to bear interest at the rate of (7) percent per annum. Furthermore the undersigned will place in escrow a properly executed mortgage for Eight Hundred and Fifty Dollars ($850.) to secure the aforementioned promissory note." "All the above conditions are contingent upon the delivery of a properly executed warranty deed and statement of title showing title to the above described premises to be good, merchantable, markatable and free and clear from any and all encumbrances except the restrictions and conditions of record if any and the taxes and assessments for the year 1927 and thereafter."

On September 26, 1927, Monday, each of the above parties had complied with the requirements of the contract of sale and escrow instructions on his or her part to be performed. Following the completion of the escrow arrangements, George I. Cramer, Inc., having accepted it and its terms fully, omitted to file said warranty deed and said mortgage for record, and further omitted to have the *certificate of title written up by an abstract*

*company*. The evidence further shows that the money was not paid to the vendor by George I. Cramer, Inc., and that Joseph W. Kennedy, defendant, was appointed receiver October 13, 1927, seventeen days after the money had been deposited with George I. Cramer, Inc., by the vendee.

It is contended by the plaintiffs that the vendor having permitted the plaintiffs to move the building upon the lot, that said defendant Elizabeth Blumenstock is estopped from pleading any defense in this matter. Estoppel defined—

"A preclusion in the law which prevents a man from alleging or denying a fact in consequence of his own previous act or allegation or denial of a contrary tenor." Stevens Pleading, page 239. "A plea which neither admits nor denies the facts alleged by the plaintiff but denies his right to allege them." Gould Pleading, chapter 2, section 29. "A special plea in bar which happens where a man has done some act or executed some deed which precludes him from averring anything to the contrary." 3 Blackstone, 308.

When we view this matter in connection with a subsequent arrangement to place the deed and consideration therefor in escrow, we must conclude that is was not the intention of either party that title was to pass at that time but to subsequently pass when all the conditions of the escrow had been performed. Certainly estoppel under these conditions would not obtain.

Plaintitffs contend also that because the vendor permitted them to move the building upon the lot that said defendant, Elizabeth Blumenstock, waived her right to deny the delivery of the deed. Such waiver is not tenable when we consider all the facts in this case and what a waiver really comprehends.

Waiver—

"The intentional relinquishment of a known right with both knowledge of its existence and the intention to relinquish it." 32 Pac. Rep., 689; 143 Mass., 374; 105 U. S. 359.

The plaintiff further urges that defendants Blumen-

stock were guilty of laches. We find the term laches defined in 21 S. E., page 277, as follows:

"The neglect to do what in law should have been done for an unreasonable and unexplained length of time and under circumstances permitting diligence." 30 Florida, page 612: "The neglect to do that which by law a man is pledged or in duty bound to do." We further quote from the 258 Pacific, page 41: "Question of reasonable length of time for examination of title and issuance of certificate and guarantee as bearing on right to rescind escrow instructions is for court or jury to decide on all the circumstances of the particular case in issue."

The evidence shows without dispute that the escrow arrangement wes entered into on the 26th day of September, 1927, and that thereafter on the 13th day of October, 1927, a receiver was appointed for George I. Cramer, Inc., the time between the escrow arrangement and the appointment of the receiver being just seventeen days. We do not feel that laches obtain in such an unreasonably short time under all the circumstances. Laches could not obtain after the appointment of the receiver because with such appointment the rights of all the parties became fixed.

We now turn our attention to the matter of the escrow. It will be kept in mind that the delivery in escrow must be to a stranger, 8 Mass., 230, Bouvier's Dictionary, page 363. It will further be taken into consideration that a deed delivered in escrow will have no effect until the performance of all the conditions of the escrow arrangement —21 Wend. 267, 56 Miss., 388; 10 Nebraska, page 1. The deed takes effect only from the second delivery—1 Barb., page 500; 30 Maine, page 110; 10 Penn, 285. But where the parties announce their intention that the escrow shall after the performance òf the conditions take effect from the date of the deed, such intention will control; 34 Ill., page 13.

The real question before the court in this fourth consideration is under all the facts and circumstances, whose money was it in the hands of the escrow agent at the time of the failure of George I. Cramer, Inc., or at

the time when said defendant corporation was placed in the hands of a receiver. Let us first consider whether or not all the conditions were complied with or consummated as provided in the escrow arrangement. (A) Conditions contained in plaintiff Miller's letter (Exhibit B) not performed:—(1) When you have a warranty deed you may cause the same to be filed for record together with mortgage if and when you obtain a new statement of title. (2) You will endorse the note and mortgage "interest paid to date of filing same for record." (3) You will issue your check for $1000, to Elizabeth Blumenstock. (4) At the consummation of this transaction you will have for the inspection of the undersigned (the Millers), first, a new statement of title showing the property in Miller, and, second, recorded warranty deed or recorder's receipt.

(B) Conditions contained in Blumenstock's letter (Exhibit D) and never performed—"(1) When you have in your possession $1000, and note and mortgage, you may cause warranty deed and mortgage to be filed for record if or when you can deliver or obtain a new statement of title. (2) You will endorse the mortgage and note as above. (3) You will issue check to Elizabeth Blumenstock for $1000, plus or less pro rations named in both contracts. (4) At the consummation of the undersigned (a) a statement of title; (b) recorded mortgage or recorder's receipt."

The court quotes the following from the 4th Ohio State, page 182,—

"Where A is entitled to a conveyance of land from B and A has agreed to convey the same to C upon the performance on the part of C of certain conditions, it is agreed between A and C that the deed shall be executed by B and C and deposited with a third person to be delivered to C upon his performance of the conditions of sale; and the deed is accordingly executed and left with such third person who afterwards delivers the deed to C without the performance of such conditions, no title passes to C by such delivery."

Quotation from 11 Ohio Appellate Reports, page 418:—

"A sale of real estate had been made and the deed placed in escrow. While the deed was in the hands of

the escrow agent the property was damaged by fire and the insurance money paid to the vendor who on demand refused to pay it to the vendee. *Held:* Payment by the insurance company was for the benefit of the property and the money paid to the vendor is for the benefit of the vendee providing the vendee complies with the terms of the escrow agreement."

From 196 California, page 141—

"Where the vendor of real property deposited his deed to the property with an escrow holder with instructions to deliver the same to the vendee upon the payment to it for his account of the purchase price, and the vendee deposited the purchase price with the escrow-holder with authority to use it in connection with the escrow when it could secure from him a title guarantee, pending the security of the title guarantee the money was held in trust by the escrow-holder "for the vendee, and where it was embezzled during said time, it was the money of the vendee that was embezzled."

From 194 California, page 699:—

"When papers, moneys, or other articles are by the agreement of parties to a transaction delivered to an escrow holder to be held by him in that capacity and to be distributed by him to the respective parties or to other persons upon the performance of the terms of the escrow, he is, prior to the performance of the conditions of the escrow, the agent of both parties thereto, and whenever the conditions attending the escrow have been so far performed that the transaction which has called the escrow into being becomes complete the nature of this dual agency changes to an agency not for both but for each of the parties to said transaction in respect to those things placed in escrow to which each has thus become completely entitled."

It is the opinion of the court that the conditions of the escrow in this case particularly as to the statement of title had not been complied with and that consequently the money in the hands of the escrow agent had not become the money of the vendor but was still the money of the vendee. Plaintiff's amended petition is accordingly dismissed. The Court finds the cross-petition of the defendant Elizabeth Blumenstock true and that she, having

performed all conditions incumbent upon her and having made timely demand is entitled to specific performance against plaintiffs and defendant receiver, for which a decree is rendered.